## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## CASE NO.

MYCOSKIE, LLC,

                Plaintiff,

vs.

THE INDIVIDUALS, PARTNERSHIPS and
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A" and
DOES 1-10,

                Defendants.

_____/

## COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiff, Mycoskie, LLC ("Mycoskie" or "Plaintiff"), hereby sues Defendants, the

Individuals, Partnerships and Unincorporated Associations identified on Schedule "A" hereto

and Does 1-10 (collectively "Defendants"). Defendants are promoting, selling, offering for sale

and distributing goods bearing counterfeits and confusingly similar imitations of Mycoskie's

TOMS trademarks within this district through various fully interactive commercial Internet

websites operating under their individual, partnership and/or business association names

identified on Schedule "A" hereto (the "Subject Domain Names"). In support of its claims,

Mycoskie alleges as follows:

## JURISDICTION AND VENUE

1.      This is an action for federal trademark counterfeiting and infringement, false

designation of origin, cybersquatting, common law unfair competition, and common law

trademark infringement pursuant to 15 U.S.C. §§ 1114, 1116, 1121, 1125(a), and 1125(d), and

The All Writs Act, 28 U.S.C. § 1651(a). Accordingly, this Court has subject matter jurisdiction

over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Mycoskie's state law claims because the claims are so related to the federal claims that they form part of the same case or controversy.

      2.      Defendants are subject to personal jurisdiction in this district because they direct business activities toward and conduct business with consumers throughout the United States, including within the State of Florida and this district through multiple fully interactive commercial Internet websites accessible in Florida, operating under the Subject Domain Names.

      3.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391. Defendants are, upon information and belief, aliens who engage in infringing activities and cause harm within this district.  Defendants have also advertised and offered to sell infringing products into this district.

## THE PLAINTIFF

      4.      Mycoskie, LLC is a California Limited Liability Company with its principal place of business at 4722 Bunny Run, Austin, Texas, 78746. TOMS Shoes, LLC ("TOMS") is the exclusive licensee of Mycoskie, LLC. TOMS is a Delaware corporation with its principal place of business at 5404 Jandy Place, Los Angeles, California, 90066.  Mycoskie, through its licensee, TOMS, is, in part, engaged in the business of distributing high quality goods, including, but not limited to, canvas shoes and footwear, throughout the world, including within this district, under multiple world famous common law and federally registered trademarks including the trademarks identified in Paragraph 18 below.  TOMS offers for sale and sells its trademarked goods within this district.  Defendants' sales of counterfeit and infringing TOMS branded products are causing damage to TOMS within this Jurisdiction.  Mycoskie regularly enforces its intellectual property rights and authorized this action be brought in its name.

2

5.      Like many other famous trademark owners in the footwear and accessories market, Mycoskie suffers ongoing daily and sustained violations of its trademark rights at the hands of counterfeiters and infringers, such as Defendants herein, who wrongfully reproduce and counterfeit Mycoskie's TOMS trademarks for the twin purposes of (i) duping and confusing the consuming public and (ii) earning substantial profits.

6.      In order to combat the indivisible harm caused by the combined actions of Defendants and others engaging in similar conduct, each year Mycoskie expends significant monetary resources in connection with trademark enforcement efforts, including legal fees, investigative fees, and support mechanisms for law enforcement, such as field training guides, and seminars. The recent explosion of counterfeiting over the Internet has created an environment that requires companies such as Mycoskie to file a large number of lawsuits, often it later turns out, against the same individuals and groups, in order to protect both consumers and itself from the ill effects of confusion and the erosion of the goodwill associated with the TOMS brand.

### THE DEFENDANTS

7.      Defendants operate through domain names registered with registrars in multiple countries, and are comprised of individuals, partnerships, and/or business entities of unknown makeup, whom, upon information and belief, reside and/or operate in other foreign jurisdictions, including the People's Republic of China. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b). Defendants target their business activities towards consumers throughout the United States, including within this district through the simultaneous operation of fully interactive commercial Internet websites existing under the Subject Domain Names.

8.      Upon information and belief, Defendants use aliases in conjunction with the operation of their businesses, including but not limited to those identified by the same Defendant Number on Schedule "A" hereto.

9.      Mycoskie is presently unaware of the true names of Does 1-10, although they are generally identified as the managing agents and/or co-conspirators of Defendants. Mycoskie will amend this Complaint upon discovery of the identities of such fictitious Defendants.

10.      Upon information and belief, Defendants are directly and personally contributing to, inducing and engaging in the sale of counterfeit branded products as alleged herein, often times as partners, co-conspirators and/or suppliers.

11.      Defendants are part of an ongoing scheme to create and maintain an illegal marketplace enterprise on the World Wide Web, which (i) confuses consumers regarding the source of Defendants' goods for profit, and (ii) expands the marketplace for illegal, counterfeit TOMS branded goods while shrinking the legitimate marketplace for Mycoskie's  genuine TOMS-branded goods. The natural and intended byproduct of Defendants' actions is the erosion and destruction of the goodwill associated with the TOMS name and associated trademarks, as well as the destruction of the legitimate market sector in which Mycoskie operates.

12.      Defendants are the past and present controlling forces behind the operation of, at least, the Subject Domain Names.

13.      Upon information and belief, Defendants directly engage in unfair competition with Mycoskie by (i) offering for sale and selling goods bearing counterfeits and infringements of one or more of Mycoskie's TOMS trademarks to consumers within the United States and this district through multiple fully interactive commercial websites operating under the Subject Domain Names and additional domains and websites not yet known to Mycoskie and (ii)

creating and maintaining an illegal marketplace enterprise for the purpose of diverting business from Mycoskie's legitimate marketplace for its genuine goods. Defendants have purposefully directed some portion of their illegal activities towards consumers in the State of Florida through the advertisement, offer to sell, sale, and shipment of counterfeit TOMS-branded goods into the State, and by operating an illegal marketplace enterprise which impacts and interferes with commerce throughout the United States, including within the State of Florida.

14.     Upon information and belief, Defendants have registered, established or purchased, and maintained their respective Subject Domain Names and the websites operating thereunder. Upon information and belief, many Defendants have engaged in fraudulent conduct with respect to the registration of the Subject Domain Names by providing false and/or misleading information to their various registrars during the registration or maintenance process. Upon information and belief, many Defendants have anonymously registered and maintained their Subject Domain Names for the sole purpose of engaging in illegal counterfeiting activities.

15.     Upon information and belief, Defendants will continue to register or acquire new domain names for the purpose of selling and offering for sale goods bearing counterfeit and confusingly similar imitations of Mycoskie's TOMS trademarks unless preliminarily and permanently enjoined. Moreover, upon information and belief, Defendants will continue to maintain and grow their illegal marketplace enterprise at Mycoskie's expense unless preliminarily and permanently enjoined.

16.     Defendants' entire Internet-based website businesses amount to nothing more than illegal operations established and operated in order to infringe the intellectual property rights of Mycoskie and others.

17.     Defendants' business names, i.e., the Subject Domain Names and any other domain names used in connection with the sale of counterfeit and infringing goods bearing Mycoskie's TOMS trademarks are essential components of Defendants' counterfeiting and infringing activities and are the means by which Defendants further their counterfeiting and infringing scheme and cause harm to Mycoskie.  Moreover, Defendants are using the famous Mycoskie and TOMS names and trademarks to drive Internet consumer traffic to their websites operating under the Subject Domain Names, thereby creating and increasing the value of the Subject Domain Names and decreasing the size and value of Mycoskie's legitimate common marketplace at Mycoskie's expense.

<u>**COMMON FACTUAL ALLEGATIONS**</u>

<u>**Mycoskie's Trademark Rights**</u>

18.     Plaintiff, Mycoskie, LLC, is, and at all times relevant hereto has been, the registered owner and TOMS Shoes, LLC, is the exclusive licensee of the following trademarks, which are valid and registered on the Principal Register of the United States Patent and Trademark Office (collectively the "TOMS Marks"):

| Trademark | Registration Number | Registration Date | Class / Goods |
|---|---|---|---|
| **TOMS** | 3,353,902 | Dec. 11, 2007 | IC 025 – Canvas shoes, shoes |
| **TOMS** | 3,566,093 | Jan. 20, 2009 | IC 025 – Clothing, namely, canvas shoes, shoes, caps, shirts, t-shirts, and hats |
| **TOMS** | 3,765,503 | Mar. 23, 2010 | IC 025 – Baseball caps; caps; hats; canvas shoes; footwear for men and women; shoes; and shirts |

| ONE FOR ONE | 4,204,485 | Sep. 11, 2012 | IC 025 – Clothing, namely hats, sweatshirts, hooded sweatshirts, t-shirts and shoes |
|---|---|---|---|

The TOMS Marks are used in conjunction with the manufacture and distribution of quality goods in the categories identified above.  True and correct copies of the Certificates of Registration for the TOMS Marks are attached hereto as Composite Exhibit "A."

19.     The TOMS Marks have been used in interstate commerce for nine years to identify and distinguish Mycoskie's high quality goods for an extended period of time and serve as symbols of Mycoskie's and TOMS' quality, reputation and goodwill. All use of the TOMS Marks by TOMS inures to the benefit of Mycoskie as the owner of the Marks.

20.     The TOMS Marks are symbols of Mycoskie's quality, reputation, and goodwill and have never been abandoned.

21.     Further, Mycoskie has expended substantial time, money, and other resources developing and otherwise promoting the TOMS Marks. The TOMS Marks qualify as famous marks as that term is used in 15 U.S.C. §1125(c)(1).

22.     Mycoskie has extensively used and promoted the TOMS Marks in the United States in association with the sale of high quality goods and has carefully monitored and policed the use of the TOMS Marks.

23.     As a result of Mycoskie's efforts, members of the consuming public readily identify merchandise bearing or sold under the TOMS Marks, as being high quality goods sponsored and approved by Mycoskie.

24.     Accordingly, the TOMS Marks have achieved secondary meaning as identifiers of quality goods.

25.     Genuine TOMS-branded goods are widely legitimately discussed and promoted by Mycoskie. Over the course of the past nine years, visibility on the Internet, particularly via

Internet search engines such as Google, Yahoo!, and Bing has become increasingly important to Mycoskie's overall marketing and consumer education efforts. Thus, Mycoskie expends significant monetary resources on Internet marketing and consumer education, including search engine optimization ("SEO") strategies. Those strategies allow Mycoskie to fairly and legitimately educate consumers about the value associated with the TOMS brand and the goods sold thereunder.

### Defendants' Infringing Activities

26.     Upon information and belief, at all times relevant hereto, Defendants in this action have had full knowledge of Mycoskie's ownership of the TOMS Marks, including its exclusive right to use and license such intellectual property and the goodwill associated therewith.

27.     Defendants are promoting and advertising, distributing, selling, and/or offering for sale, goods in interstate commerce bearing counterfeits and confusingly similar imitations of the TOMS Marks (collectively, the "Counterfeit Goods"), through the fully interactive commercial Internet websites operating under the Subject Domain Names. True and correct copies of the web pages reflecting samples of the Internet websites operating under the Subject Domain Names are attached hereto as Composite Exhibit "B." Specifically, upon information and belief, Defendants are using identical copies of the TOMS Marks for different quality goods. Mycoskie has used the TOMS Marks extensively and continuously before Defendants began offering counterfeit and confusingly similar imitations of Mycoskie's TOMS merchandise.

28.     Upon information and belief, Defendants' Counterfeit Goods are of a quality substantially different than that of Mycoskie's genuine TOMS goods. Defendants, upon information and belief, are actively using, promoting and otherwise advertising, distributing, selling, and/or offering for sale substantial quantities of their Counterfeit Goods with the

8

knowledge and intent that such goods will be mistaken for the genuine high quality products offered for sale by Mycoskie despite Defendants' knowledge that they are without authority to use the TOMS Marks. The net effect of Defendants' actions will cause confusion of consumers at the time of initial interest, sale, and in the post-sale setting, who will believe Defendants' Counterfeit Goods are genuine goods originating from, associated with, and approved by Mycoskie.

29.     Defendants advertise their Counterfeit Goods for sale to the consuming public via websites operating under at least the Subject Domain Names. In so advertising these products, Defendants improperly and unlawfully use the TOMS Marks without Mycoskie's permission. Indeed, Defendants herein misappropriated Mycoskie's methods of doing business with regard to the promotion and sale of Mycoskie's genuine goods. Upon information and belief, the misappropriation of Mycoskie's promotion ideas in the form of the TOMS Marks is the proximate cause of harm to Mycoskie.

30.     As part of their overall infringement and counterfeiting scheme, Defendants are, upon information and belief, all concurrently employing substantially similar, and often times coordinated, paid advertising and SEO strategies based, in large measure, upon an illegal use of counterfeits and infringements of the TOMS Marks. Specifically, Defendants are using counterfeits of Mycoskie's famous name and the TOMS Marks in order to make their websites selling illegal goods appear more relevant and attractive to search engines across an array of search terms. By their actions, Defendants have created an illegal marketplace operating in parallel to the legitimate marketplace for Mycoskie's genuine TOMS goods. Defendants are causing concurrent and indivisible harm to Mycoskie and the consuming public by (i) depriving Mycoskie of its right to fairly compete for space within search engine results and reducing the

visibility of Mycoskie's genuine goods on the World Wide Web, (ii) causing an overall degradation of the value of the goodwill associated with the TOMS Marks, (iii) increasing Mycoskie's overall cost to market its goods and educate consumers about its brand via the Internet, and (iv) maintaining an illegal marketplace enterprise, which perpetuates the ability of Defendants and future entrants to that marketplace to confuse consumers and harm Mycoskie with impunity.

31.     Upon information and belief, Defendants are concurrently conducting and targeting their counterfeiting and infringing activities toward consumers and causing harm, within this district and elsewhere throughout the United States. As a result, Defendants are defrauding Mycoskie and the consuming public for Defendants' own benefit. Defendants' infringement and disparagement of Mycoskie does not simply amount to the wrong description of their goods or the failure of the goods to conform to the advertised quality or performance.

32.     Defendants' use of the TOMS Marks, including the promotion and advertisement, reproduction, distribution, sale, and offering for sale of their Counterfeit Goods, is without Mycoskie's consent or authorization.

33.     Defendants are engaging in the above-described illegal counterfeiting and infringing activities knowingly and intentionally or with reckless disregard or willful blindness to Mycoskie's rights for the purpose of trading on Mycoskie's goodwill and reputation. If Defendants' intentional counterfeiting and infringing activities are not preliminarily and permanently enjoined by this Court, Mycoskie and the consuming public will continue to be harmed.

34.     Defendants' above identified infringing activities are likely to cause confusion, deception, and mistake in the minds of consumers, the public, and the trade before, during, and

after the time of purchase. Moreover, Defendants' wrongful conduct is likely to create a false impression and deceive customers, the public, and the trade into believing there is a connection or association between Mycoskie's genuine TOMS goods and Defendants' Counterfeit Goods, which there is not.

35.     Moreover, multiple Defendants have registered their respective Subject Domain Name(s) using marks that are nearly identical and/or confusingly similar to at least one of the TOMS Marks (collectively the "Cybersquatted Subject Domain Names").

36.     Defendants do not have, nor have they ever had, the right or authority to use the TOMS Marks. Further, the TOMS Marks have never been assigned or licensed to be used on any of the websites operating under the Cybersquatted Subject Domain Names.

37.     Upon information and belief, Defendants have provided false and/or misleading contact information when applying for the registration of the Cybersquatted Subject Domain Names, or have intentionally failed to maintain accurate contact information with respect to the registration of the Cybersquatted Subject Domain Names.

38.     Upon information and belief, Defendants have never used any of the Cybersquatted Subject Domain Names in connection with a bona fide offering of goods or services.

39.     Upon information and belief, Defendants have not made any bona fide non-commercial or fair use of the TOMS Marks on a website accessible under any of the Cybersquatted Subject Domain Names.

40.     Upon information and belief, Defendants have intentionally incorporated the TOMS Marks in their Cybersquatted Subject Domain Names to divert consumers looking for Mycoskie's Internet website to their own Internet websites for commercial gain.

41.     Given the visibility of Defendants' various websites and the similarity of their actions, including their SEO activities, it is clear Defendants are either related, or at a minimum, cannot help but know of each other's existence and the damage likely to be caused to Mycoskie as a result of Defendants' concurrent actions.

42.     Although some Defendants may be acting independently, they may properly be deemed to be acting in concert because they are combining the force of their actions to multiply the harm caused to Mycoskie.

43.     Mycoskie has no adequate remedy at law.

44.     Mycoskie is suffering irreparable and indivisible injury and has suffered substantial damages as a result of Defendants' unauthorized and wrongful use of the TOMS Marks. If Defendants' counterfeiting, infringing, cybersquatting, unfairly competitive activities, and their illegal marketplace enterprise are not preliminarily and permanently enjoined by this Court, Mycoskie and the consuming public will continue to be harmed.

45.     The harm and damage sustained by Mycoskie have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offers to sell, and sale of their Counterfeit Goods and by the creation, maintenance and very existence of Defendants' illegal marketplace enterprise.

## COUNT I - TRADEMARK COUNTERFEITING AND INFRINGEMENT PURSUANT TO § 32 OF THE LANHAM ACT (15 U.S.C. § 1114)

46.     Mycoskie hereby adopts and re-alleges the allegations set forth in Paragraphs 1 through 46 above.

47.     This is an action for trademark counterfeiting and infringement against Defendants based on their use of counterfeits, copies, and/or colorable imitations of the TOMS

Marks in commerce in connection with the promotion, advertisement, distribution, sale and/or offering for sale of the Counterfeit Goods.

48.     Specifically, Defendants are promoting and otherwise advertising, selling, offering for sale and distributing products bearing one or more of the TOMS Marks. Defendants are continuously infringing and inducing others to infringe the TOMS Marks by using them to advertise, promote sell and/or offer to sell goods bearing the TOMS Marks.

49.     Defendants' indivisible and concurrent counterfeiting and infringing activities are likely to cause and, actually are causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' Counterfeit Goods.

50.     Defendants' unlawful actions have individually and jointly caused and are continuing to cause unquantifiable damage and irreparable harm to Mycoskie and are unjustly enriching Defendants at Mycoskie's expense.

51.     Defendants' above-described illegal actions constitute counterfeiting and infringement of the TOMS Marks in violation of Mycoskie's rights under § 32 of the Lanham Act, 15 U.S.C. § 1114.

52.     Mycoskie has suffered and will continue to suffer irreparable injury due to Defendants' above described activities if Defendants are not preliminarily and permanently enjoined.

## COUNT II - FALSE DESIGNATION OF ORIGIN
## PURSUANT TO § 43(a) OF THE LANHAM ACT (15 U.S.C. § 1125(a))

53.     Mycoskie hereby adopts and re-alleges the allegations set forth in Paragraphs 1 through 46 above.

54. Defendants' Counterfeit Goods bearing and sold under copies of the TOMS Marks have been widely advertised and offered for sale throughout the United States.

55. Defendants' Counterfeit Goods bearing and sold under copies of the TOMS Marks are virtually identical in appearance to each of Mycoskie's genuine goods. However, Defendants' Counterfeit Goods are different in quality. Accordingly, Defendants' activities are likely to cause confusion in the trade and among the general public as to at least the origin or sponsorship of their Counterfeit Goods.

56. Defendants, upon information and belief, have used in connection with their advertisement, offer for sale, and sale of the Counterfeit Goods, false designations of origin and false descriptions and representations, including words or other symbols and trade dress which tend to falsely describe or represent such goods and have caused such goods to enter into commerce with full knowledge of the falsity of such designations of origin and such descriptions and representations, all to Mycoskie's detriment.

57. Defendants have authorized infringing uses of the TOMS Marks in Defendants' advertisement and promotion of their counterfeit and infringing branded products. Defendants have also misrepresented to members of the consuming public that the Counterfeit Goods being advertised and sold by them are genuine, non-infringing products.

58. Additionally, Defendants are using counterfeits and infringements of the TOMS Marks in order to unfairly compete with Mycoskie and others for space within search engine organic results, thereby jointly depriving Mycoskie of a valuable marketing and educational tool which would otherwise be available to Mycoskie, and reducing the visibility of Mycoskie's genuine goods on the World Wide Web.

59.     Defendants' above-described actions are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

60.     Mycoskie has no adequate remedy at law, and has sustained indivisible injury and damage caused by Defendants' concurrent conduct. Absent an entry of an injunction by this Court, Mycoskie will continue to suffer irreparable injury to its goodwill and business reputation as well as monetary damages.

## COUNT III - CLAIM FOR RELIEF FOR CYBERSQUATTING PURSUANT TO §43(d) OF THE LANHAM ACT, 15 U.S.C. §1125(d)

61.     Mycoskie hereby adopts and re-alleges the allegations set forth in Paragraphs 1 through 46 above.

62.     At all times relevant hereto, Mycoskie has been and still is the owner of the rights, title and interest in and to the TOMS Marks.

63.     Upon information and belief, Defendants have acted with the bad faith intent to profit from the TOMS Marks and the goodwill associated with the TOMS Marks by registering and using the Cybersquatted Subject Domain Names.

64.     The TOMS Marks were distinctive and famous at the time Defendants registered the Cybersquatted Subject Domain Names.

65.     The Cybersquatted Subject Domain Names are identical to, confusingly similar to, or dilutive of at least one of the TOMS Marks.

66.     Defendants have no intellectual property rights in or to the TOMS Marks.

67.     Defendants' conduct is done with knowledge and constitutes a willful violation of Mycoskie's rights in the TOMS Marks. At a minimum, Defendants' conduct constitutes reckless disregard for and willful blindness to Mycoskie's rights.

15

68.     Defendants' actions constitute cybersquatting in violation of §43(d) of the Lanham Act, 15 U.S.C. §1125(d).

69.     Mycoskie has no adequate remedy at law.

70.     Mycoskie has suffered and will continue to suffer irreparable injury due to the above described activities of Defendants if Defendants are not preliminarily and permanently enjoined.

## COUNT IV – COMMON LAW UNFAIR COMPETITION

71.     Mycoskie hereby adopts and re-alleges the allegations set forth in Paragraphs 1 through 46 above.

72.     This is an action against Defendants based on their (i) promotion, advertisement, distribution, sale, and/or offering for sale of goods bearing marks which are virtually identical, both visually and phonetically, to the TOMS Marks, and (ii) creation and maintenance of an illegal, ongoing marketplace enterprise operating in parallel to the legitimate marketplace in which Mycoskie sells its genuine goods, in violation of Florida's common law of unfair competition.

73.     Specifically, Defendants are promoting and otherwise advertising, selling, offering for sale and distributing infringing and counterfeit TOMS-branded products. Defendants are also using counterfeits and infringements of the TOMS Marks to unfairly compete with Mycoskie and others for (i) space in search engine results across an array of search terms and (ii) visibility on the World Wide Web.

74.     Defendants' infringing activities are likely to cause and actually are causing confusion, mistake and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' products by their use of the TOMS Marks.

75.     Mycoskie has no adequate remedy at law and is suffering irreparable injury and damages as a result of Defendants' actions.

### COUNT V - COMMON LAW TRADEMARK INFRINGEMENT

76.     Mycoskie hereby adopts and re-alleges the allegations set forth in Paragraphs 1 through 46 above.

77.     This is an action for common law trademark infringement against Defendants based on their promotion, advertisement, offering for sale, and sale of their Counterfeit Goods bearing the TOMS Marks.  Mycoskie is the owner of all common law rights in and to the TOMS Marks.

78.     Specifically, Defendants, upon information and belief, are manufacturing, promoting and otherwise advertising, distributing, offering for sale, and selling goods bearing infringements of the TOMS Marks.

79.     Defendants' infringing activities are likely to cause and actually are causing confusion, mistake and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' Counterfeit Goods bearing the TOMS Marks.

80.     Mycoskie has no adequate remedy at law and is suffering damages and irreparable injury as a result of Defendants' actions

### PRAYER FOR RELIEF

81.     WHEREFORE, Mycoskie demands judgment on all Counts of this Complaint and an award of equitable relief and monetary relief, jointly and severally, against Defendants as follows:

        a.      Entry of temporary, preliminary, and permanent injunctions pursuant to 15 U.S.C. § 1116 and Federal Rule of Civil Procedure 65 enjoining Defendants, their agents,

representatives, servants, employees, and all those acting in concert or participation therewith, from manufacturing or causing to be manufactured, importing, advertising or promoting, distributing, selling or offering to sell their Counterfeit Goods; from infringing, counterfeiting, or diluting the TOMS Marks; from using the TOMS Marks, or any mark or trade dress similar thereto, in connection with the sale of any unauthorized goods; from using any logo, trade name, trademark or trade dress which may be calculated to falsely advertise the services or products of Defendants as being sponsored by, authorized by, endorsed by, or in any way associated with Mycoskie; from falsely representing themselves as being connected with Mycoskie, through sponsorship or association, or engaging in any act which is likely to falsely cause members of the trade and/or of the purchasing public to believe any goods or services of Defendants, are in any way endorsed by, approved by, and/or associated with Mycoskie; from using any reproduction, counterfeit, infringement, copy, or colorable imitation of the TOMS Marks in connection with the publicity, promotion, sale, or advertising of any goods sold by Defendants; from affixing, applying, annexing or using in connection with the sale of any goods, a false description or representation, including words or other symbols tending to falsely describe or represent Defendants' goods as being those of Mycoskie, or in any way endorsed by Mycoskie and from offering such goods in commerce; from engaging in search engine optimization strategies using colorable imitations of Mycoskie's name or the TOMS Marks; and from otherwise unfairly competing with Mycoskie.

b.      Entry of temporary, preliminary, and permanent injunctions pursuant to 28 U.S.C §1651(a), The All Writs Act, enjoining Defendants and all third parties from creating, maintaining, operating, joining, participating in, including providing financial, technical or other

support to, the World Wide Web based illegal marketplace for the  sale and distribution of or

distribute non-genuine goods bearing counterfeits of the TOMS Marks.

        c.      Entry of an order that, upon Mycoskie's request, those in privity with

Defendants and those with notice of the injunction, including any Internet search engines, Web

hosts, domain-name registrars and domain-name registries or their administrators that are

provided with notice of the injunction, cease facilitating access to any or all domain names and

websites through which Defendants engage in the promotion, offering for sale and/or sale of

goods using counterfeits and/or infringements of the TOMS Marks.

        d.      Entry of an order that, upon Mycoskie's request, the top level domain

(TLD) Registry for each of the Subject Domain Names or their administrators, including

backend registry operators or administrators, place the Subject Domain Names on Registry Hold

status for the remainder of the registration period for any such domain name, thus removing them

from the TLD zone files which link the Subject Domain Names to the IP addresses where the

associated websites are hosted.

        e.      Entry of an order canceling for the life of the current registration or, at

Mycoskie's election, transferring the Subject Domain Names and any other domain names used

by Defendants to engage in their counterfeiting of the TOMS Marks at issue to Mycoskie's

control so they may no longer be used for illegal purposes.

        f.      Entry of an order requiring Defendants to account to and pay Mycoskie for

all profits and damages resulting from Defendants' trademark counterfeiting and infringing

activities and that the award to Mycoskie be trebled, as provided for under 15 U.S.C. §1117, or,

at Mycoskie's election with respect to Count I, that Mycoskie be awarded statutory damages

from each Defendant in the amount of two million dollars ($2,000,000.00) per each counterfeit

trademark used and product sold, as provided by 15 U.S.C. §1117(c)(2) of the Lanham Act.

       g.    Entry of an order requiring the relevant Defendants to account to and pay Mycoskie for all profits and damages resulting from those Defendants' cybersquatting activities and that the award to Mycoskie be trebled, as provided for under 15 U.S.C. §1117, or, at Mycoskie's election with respect to Count III, that Mycoskie be awarded statutory damages from the relevant Defendants in the amount of one hundred thousand dollars ($100,000.00) per cybersquatted domain name used as provided by 15 U.S.C. §1117(d) of the Lanham Act.

       h.    Entry of an award of Mycoskie's costs and reasonable attorneys' fees and investigative fees associated with bringing this action.

       i.    Entry of an award of pre-judgment interest on the judgment amount.

       j.    Entry of an order for any further relief as the Court may deem just and proper.

DATED: July 28, 2015.          Respectfully submitted,

          STEPHEN M. GAFFIGAN, P.A.

          By: **s:/Stephen M. Gaffigan/**
          Stephen M. Gaffigan (Fla. Bar No. 025844)
          Virgilio Gigante (Fla. Bar No. 082635)
          Christine Ann Daley (Fla. Bar. No. 98482)
          401 East Las Olas Blvd., Suite 130-453
          Ft. Lauderdale, Florida 33301
          Telephone: (954) 767-4819
          Facsimile: (954) 767-4821
          E-mail: Stephen@smgpa.net
          E-mail: Leo@smgpa.net
          E-mail: Christine@smgpa.net

          Attorneys for Plaintiff

**SCHEDULE "A"**
**DEFENDANTS BY NUMBER AND SUBJECT DOMAIN NAME**

| Defendant Number | Subject Domain Name |
|---|---|
| 1 | 2015tomsonsale.com |
| 1 | 2015viptoms.com |
| 1 | officialtomsoutletstore.com |
| 1 | toms2015onsale.com |
| 2 | actionsportsagency.co.uk |
| 2 | blackrosherunukshop.co.uk |
| 2 | prolibour.com |
| 3 | ameratexenergy.us |
| 4 | bagsite.net |
| 5 | beautytomsshoes.com |
| 6 | besttomsshoesmall.com |
| 7 | billigesalg.com |
| 7 | kjoptomsnorge.com |
| 8 | buymytomsau.com |
| 9 | cheapstomsoutlet2014.com |
| 9 | cheapstomsoutlets2014.com |
| 9 | cheaptomsonline2014.com |
| 9 | tomsoutletonlineclassics.com |
| 9 | tomsoutletonlinesshoe.com |
| 9 | tomsoutletonlinesshoes.com |
| 9 | tomsoutletsonlineclassics.com |
| 9 | tomstoresoutlets.com |
| 9 | cheaptomsoutlets2014.com |
| 9 | tomsoutletsshoesonlines.com |
| 9 | tomsoutletclassicsonlines.com |
| 10 | cheaptoms-outlet-sale.com |
| 10 | tomsshoes-outlet.net |
| 11 | cheaptomsshoescanda.com |
| 11 | lojsp.com |
| 11 | mytomsoutlet.com |
| 11 | shoestomsonline.com |
| 11 | tomsshoes2u.com |
| 11 | tomssportreport.com |
| 12 | coolcanvasguide.com |
| 12 | freshtomsmall.com |
| 12 | tomsshoptrade.com |

| Defendant Number | Subject Domain Name |
|------------------|---------------------|
| 12 | wintertomsmall.com |
| 13 | dontgetittwisted.org |
| 13 | jackdeheer.com |
| 13 | m2xnet.net |
| 13 | tomsoutletstore2014.com |
| 13 | shoesoutlet2015.com |
| 13 | toms2015.com |
| 13 | tomscheapshoe.com |
| 13 | tomsoutletstore2015.com |
| 13 | tomsoutletstoreonline.net |
| 14 | enbag1.com |
| 14 | shxjm.xyz |
| 15 | gotomsshoesoutlet.com |
| 16 | hottestshoetrends.com |
| 16 | made-in-ar.com |
| 16 | thefineshoes.com |
| 17 | land-send.co.uk |
| 18 | myshoehub.net |
| 19 | notosko.com |
| 19 | tomsone.net |
| 19 | tomsono.com |
| 19 | tomsscarpeit.com |
| 19 | tomstosko.com |
| 19 | skotoms.com |
| 20 | ordershoesworks.com |
| 20 | shoesnewsdiscount.com |
| 21 | orsimcha.org |
| 21 | topcanvas.org |
| 21 | tomsfactorysale.org |
| 22 | percyisland.com |
| 23 | promoshoesforsale.com |
| 24 | saletomsonline4u.us |
| 25 | shoestomsoutle.com |
| 25 | tomsoutlethot.com |
| 25 | tomsshopsale.com |
| 25 | tomsstoresshoes.com |
| 26 | sleekshoemall.com |
| 26 | tomscanvas2015.com |

| Defendant Number | Subject Domain Name |
| --- | --- |
| 27 | sneakers4u.net |
| 28 | tomoutlets.com |
| 28 | tomsusza.org |
| 29 | toms19.com |
| 29 | tomsofficaluk.com |
| 29 | toms-sko.net |
| 29 | toms-online.com |
| 30 | toms2buy.com |
| 31 | tomsamsterdam.nl |
| 32 | tomsbeautyshoes.com |
| 33 | tomsnewfashion.com |
| 34 | tomsoslobarnsko.com |
| 34 | tomsoslonorge.com |
| 35 | tomsoutlet.name |
| 35 | tomsshoesoutletonline.name |
| 36 | tomsoutletpro.com |
| 37 | tomsschuhe.de |
| 38 | tomsshoearea.com |
| 39 | tomsshoemallonline.com |
| 40 | tomsshoeoutletonline.com |
| 41 | tomsshoeoutlets.com |
| 42 | tomsshoesbar.com |
| 43 | tomsshoesmarket.com |
| 44 | tomsshoesofficial.com |
| 45 | toms-shoes-online.com |
| 46 | tomsshoes-outletonline.com |
| 47 | tomsshoesred.com |
| 48 | tomsskonorge.net |
| 49 | tomsvip.com |
| 50 | womenshoesfactory.org |